## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMAN HOSPITAL SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-1234 |
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court are a Motion for Remand [Doc. # 3] ("Plaintiff's Motion") filed by Plaintiff Memorial Herman Hospital System ("MHHS"), and a Motion to Dismiss [Doc. # 10] ("Defendants' Motion") filed by Defendants Great-West Life & Annuity Insurance Company, Great-West Healthcare of Texas, Inc., Harris Moving & Storage Company, Cotton Moving & Storage, Inc., and Houston Exploration Company.[1]  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that there is no subject matter jurisdiction over the claims asserted and Plaintiff's Motion should be **granted**.

---

[1]   Defendants have responded to Plaintiff's Motion [Doc. # 10].  Plaintiff has filed a brief in support of its Motion [Doc. # 4], a response to Defendants' Motion, and a reply to Defendants' response to Plaintiff's Motion [Doc. # 14].

The Court also concludes that Defendants' Motion should be **denied without prejudice.**

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

MHHS alleges that Defendants made misrepresentations of coverage for treatment MHHS provided to Wayne Cotton ("Cotton") and Billy Franklin ("Franklin"). When Great-West "undertook a course of conduct to delay payment and misrepresent[] material facts as to payment and coverage," MHHS filed a petition in state court asserting claims under the Texas Insurance Code Article 21.21 §§ 4, 16 and Texas Business and Commerce Code, § 17.46 (Count One); common law negligence (Count Two); violation of Articles 3.70, 20A.18B, and 21.55 of the Texas Insurance Code and breach of contract under the Hospital Agreement between MHHS and Great-West; and for attorney's fees under Article 38.001 of the Texas Civil Practices and Remedies Code (Count Three). Defendants removed to this Court on the ground that the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, completely preempts the claims.

Plaintiff's Original Petition alleges the following facts. Cotton was an employee of Cotton Moving & Storage, Inc., which may have been purchased by Harris Moving & Storage Company. Franklin was an employee of Houston Exploration Company. Cotton and Franklin participated in employee benefits plans through their employers.

The plans were issued, administered, or provided by One Health Plan of Texas, Inc., which merged with Great-West Life & Annuity Insurance Co. and is now known as Great-West Healthcare of Texas, Inc. ("Great-West").  Plaintiff's Original Petition, ¶¶ 13-15.

Great-West entered a managed care Hospital Agreement ("Hospital Agreement") with MHHS effective July 1, 2002.  In the Hospital Agreement, MHHS agreed to render medical treatment and related services to eligible members and subscribers of Great-West.  In turn, Great-West promised to compensate MHHS for the services rendered to its subscribers.  The Hospital Agreement  provides:

> This Agreement . . . constitutes the entire Agreement between the Company [Great-West] and Hospital [MHHS].  It will be construed and governed in accordance with the Act.  Any provision required to be in this Agreement by the Act will bind Company and Hospital whether or not provided in this Agreement.  Any provision herein inconsistent therewith will be of no force and effect and will be severable without affecting the validity or enforceability of the remaining provisions of this Agreement.

Hospital Agreement, Exhibit A to Plaintiff's Original Petition, at 17.  The Hospital Agreement specifies that the term "Act" "means the Texas Health Maintenance Organization Act, Article 20A, Texas Insurance Code and the rules and regulations thereunder."  *Id.* at 1.

On July 9, 2003, Cotton was admitted at MHHS for a kidney transplant and treated for related medical problems.  MHHS admitted Franklin on July 16, 2003 and

3

treated him for an undisclosed severe medical condition.  Great-West informed MHHS that Cotton and Franklin were covered under an insurance plan and verified coverage and benefits.  Relying on these representations, MHHS treated Cotton and Franklin as patients and provided the medically necessary treatment commensurate with their severe illnesses.  MHHS's usual and customary billed charges for the services provided amounted to $457,928.75 for Cotton, and $80,896.75 for Franklin.  After MHHS submitted claims for these patients to Great-West, Great-West "undertook a course of conduct to delay payment and misrepresent[] material facts as to payment and coverage."  Plaintiff's Original Petition, ¶¶ 16-17, 19-20.

## II.   DISCUSSION

### A.   Legal Standards for Removal and ERISA's Complete Preemption

Federal jurisdiction is limited.   The party invoking this Court's removal jurisdiction bears the burden of establishing federal jurisdiction.  *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001);  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997) (citation omitted).  The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."  *Frank*, 128 F.3d at 922; *Manguno*, 276 F.3d at 723.   In evaluating the

propriety of removal, this Court must evaluate all factual allegations in the light most favorable to Plaintiff, must resolve all contested issues of fact in favor of Plaintiff, and must resolve all ambiguities of controlling state law in favor of Plaintiff. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (citations omitted).

Removal is proper if the federal district court has original jurisdiction over an action brought in state court. *See* 28 U.S.C. § 1441(a). In order to determine whether a case was properly removed to federal court on the basis of federal question jurisdiction, a court must normally examine the plaintiff's claims under the well-pleaded complaint rule. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). Under the well-pleaded complaint rule, "a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Aetna Health Inc. v. Davila,* 124 S.Ct. 2488, 2494 (2004) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 10 (1983) (emphasis in *Aetna*)). "The existence of a federal defense normally does not create statutory 'arising under' jurisdiction." *Id.* Thus, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet*, 522 U.S. at 475; *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)). Even if the factual predicate underlying a plaintiff's complaint *could* have served as the basis for a federal claim, the plaintiff has

the prerogative to forgo the federal claim and assert only state law claims in order to prevent removal.  The well-pleaded complaint rule makes the plaintiff the master of the claim; the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

In certain areas of the law, however, a federal statute may wholly displace and therefore completely preempt a plaintiff's state law claim, rendering an action removable despite the plaintiff's efforts to keep the action in state court.  *See Davila,* 124 S.Ct. at 2495.  Under the complete preemption doctrine, Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature.  *Rivet*, 522 U.S. at 475 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law."); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), is one such statute:

> [T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Hence, causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court.

*Davila,* 124 S.Ct. at 2496 (citations omitted) (holding that state law claims brought by beneficiaries and participants in ERISA-regulated employee benefit plans for failure to

exercise ordinary care in handling coverage for medical treatments were completely preempted).  In *Davila,* the Supreme Court stated the test for complete preemption of claims under § 502 of ERISA:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id*. at 2496 (citation omitted).

Accordingly, under the *Davila* analysis, this case is removable only if:  (1) MHHS could have brought any of its state-law claims under § 502, *and* (2) no other independent legal duty supports the claim(s).  *See Pasacack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004) (holding that claim by hospital for breach of subscriber agreement between hospital and plan, which alleged that plan improperly calculated payments for services rendered to beneficiary, was not completely preempted by § 502); *Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc.,* 360 F. Supp. 2d 202, (D. Mass. 2005) (applying *Davila*, holding that hospital's claim for breach of hospital services agreement was not preempted).

**B.**   **Analysis of Complete Preemption of Plaintiff's Claims**

**1.**   **MHHS's Claims As Third-Party Medical Provider**

The first question under *Davila*'s complete preemption test is whether Plaintiff

is an "individual bring[ing] suit complaining of a denial of coverage for medical care,

where the individual is entitled to such coverage only because of the terms of an

ERISA-regulated employee benefit plan," or "an individual [who] at some point in

time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila,* 124 S.Ct.

at 2496.  Most courts, including the Fifth Circuit, have held that a hospital has standing

to sue under § 502(a) as an assignee of a participant or beneficiary in order to claim

plan benefits.  *See Hermann Hosp. v. MEBA Med. & Ben. Plan,* 845 F.2d 1286, 1289

(5th Cir. 1999) (ERISA benefits assignable); *Pascack Valley Hosp. v. Local 464A*

*UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 n.7 (3d Cir. 2004) (same);

*City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.,* 156 F.3d 223, 228-29 (1st Cir. 1998)

(same); *Misic v. Building Serv. Employee's Health,* 789 F.2d 1374, 1377 (9th Cir.

1986) (same).  Thus, any state causes of action for benefits under a plan brought by a

provider ***as an assignee*** are completely preempted under ERISA.  Here, there is some

evidence that MHHS has assignments from Cotton and Franklin and could sue under

§ 502 of ERISA as an assignee.[2]

---

[2]   *See* Exhibit F to Defendant's Response (billings MHHS submitted to Great-West, allegedly
(continued...)

Eschewing its right to bring its claim under § 502 as an assignee of benefits, MHHS states that it only presses claims asserting violations of those legal duties that are independent of ERISA.  Contrary to Defendants' assertion, the fact that MHHS could have elected to sue as an assignee is not the test for complete preemption.  As a master of its own complaint, MHHS had the right to assert independent causes of action regardless of the assignment.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987) ("[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law . . . . If a defendant could do so, the plaintiff would be master of nothing.").  Although a hospital's claim cannot be completely preempted if it did not receive an assignment,[3] the assignment itself is not sufficient to result in complete preemption of the hospital's claim.  *See Baylor Univ. Med. Ctr. v. Epoch Group, L.C.,*

---

[2]        (...continued)
representing that it had obtained an assignment of rights which allowed them to seek payment directly from Great-West).

[3]        *See Peninsula Reg'l Med. Ctr. v. Mid Atlantic Med. Servs., LLC.,* 327 F. Supp. 2d 572, 575, 576 (D. Md. 2004) ("The 'threshold question' presented by [the *Davila*] test is whether the plaintiff has standing to sue under ERISA's civil enforcement provision. . . . Without the specific assignment of rights by a participant or beneficiary, however, this Court finds no authority to support the proposition that a third-party provider has standing to sue on its own behalf under ERISA."); *Johns Hopkins Hosp., Carefirst of Md., Inc.,* 327 F. Supp. 2d 577, 581 (D. Md. 2004) (citing *Davila* test for proposition that "[t]he plaintiff's standing to sue under [§ 502(a)(1)(B)] is . . . an essential requirement in determining whether claims are preempted"); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.,* 2005 WL 1038072 *3 (E.D. La. Apr. 27, 2005) ("Without an assignment of benefits from a 'participant or 'beneficiary' of an ERISA plan, . . . a third-party health care provider[] does not have standing to assert an enforcement claims under [state law].").

340 F. Supp. 2d 749, 760 n.9 (N.D. Tex. 2004) (Fish, C.J.) ("That [plaintiff] could have sued as an assignee is not dispositive. . . . Given [plaintiff's] independent right of action as a creditor, the court will not recharacterize [it] as an assignee."); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.,* 2005 WL 1038072 *3 n.3 (E.D. La. Apr. 27, 2005) ("That [plaintiff] may, in fact, have an assignment, is not itself dispositive, if the rights at issue are those provided by a third party agreement, rather than an ERISA plan."); *Children's Hosp.,* 360 F. Supp. 2d at 206 ("As a master of its own complaint, [plaintiff] had the right to assert independent causes of action regardless of the assignment."); *cf. Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) (stating that discouraging health care providers from becoming assignees would "undermine Congress' goal of enhancing employees' health and welfare benefit coverage").

Thus, complete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim. *See Davila*, 124 S.Ct. at 2496. To determine whether a legal duty is "entirely" independent of an ERISA plan, the Court must look beyond "the particular label affixed to" the state-law claim. *Id* at 2498. A legal duty is not independent if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Id.*

2.      **Breach of Contract Claims and Related Texas Insurance Code Claims**

MHHS contends that Great-West breached the Hospital Agreement by failing to pay claims within 30 days in accordance with the terms of the Hospital Agreement. Great-West points out that the Hospital Agreement makes repeated reference to underlying "plans," "contracts," "members," and "groups," terms which the parties likely understood to refer, at least in part, to ERISA-governed employee benefit plans.[4] *See* Defendants' Response, at 4-6.  MHHS's breach of contract claims do not "derive entirely" from the insured's ERISA plans, but from the independent contract between MHHS and Great-West.  Great-West offers no support for its assertion that "repeated" contractual references to potential ERISA plans result in complete preemption of all breach of contract claims.  MHHS alleges rights to compensation as a third-party health care provider at rates and under terms set forth in the Hospital Agreement, not terms of Cotton and Franklin's underlying ERISA plans.  Participants and beneficiaries of the ERISA plans could not assert the claims MHHS seeks to pursue here.  Thus, at no point in time could MHHS "have brought its claim under ERISA § 502(a)(1)(B)." *Davila,* 124 S.Ct. at 2496.

The Court concludes that MHHS's rights do not derive entirely from the

---

[4]      MHHS does not appear to contest Great-West's assertion that Franklin and Cotton were participants in such ERISA-governed plans. *See* Defendants' Response, at 7-8.

particular rights and obligations established by ERISA benefit plans.  MHHS's breach

of contract claim, therefore, is not completely preempted under a *Davila* analysis.  *See*

*Baylor v. Epoch,* 340 F. Supp. 2d at 759 (holding that a state contract claim brought

by a healthcare provider under intertwined contracts, including a subscriber services

agreement, was not preempted); *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.,* 2004

WL 2434290, at *2 (N.D. Tex. Oct. 29, 2004) (same (upon reconsideration in light of

*Davila*)); *Tenet Healthsystem,* 2005 WL 1038072, at *3 (rejecting defendants'

contention that plaintiff's claim for breach of hospital services agreement was

completely preempted under *Davila*); *Children's Hosp.,* 360 F. Supp. 2d at 206 (same);

*cf. Caterpillar Inc. v. Williams,* 482 U.S. 386, 399 (1987) (holding that plaintiffs'

claims under non-preempted individual contract were not completely preempted even

though plaintiff could have brought claims under collective bargaining agreement,

which claims would have given the federal court removal jurisdiction).[5]

Plaintiff also brings claims under Articles 3.70, 20A.18B, and 21.55 of the Texas

Insurance Code, alleging that Great-West failed and refused to pay MHHS's claims in

---

[5]      The Court is aware of the ruling in *Radiology Assocs. of San Antonio, P.A. v. Aetna Health, Inc.,* 2005 WL 578150 (W.D. Tex. Mar. 2, 2005), that a third-party health care provider's claims under a physician group agreement were completely preempted under *Davila* because "the rights and obligations of the parties are defined by reference to the ERISA-regulated plan" and therefore the agreement did not establish an "independent legal duty."  The Court respectfully disagrees with this reading of *Davila,* which addressed only claims by a participant and a beneficiary regarding denials of coverage promised under the terms of their respective ERISA plans.  *See Davila,* 124 S.Ct. at 2496.

accordance with the Hospital Agreement.[6]  Articles 20A.18B, 3.70, and 21.55 of the

Texas Insurance Code require insurers, including health maintenance organizations

("HMOs") and preferred provider organizations ("PPOs"), to promptly pay the claims

of physicians and other health care providers.  *See Baylor Univ. Med. Ctr. v. Arkansas*

*Blue Cross Blue Shield,* 331 F. Supp. 2d 502, 511 (N.D. Tex. 2004).   Article

20A.18B(c), a now-repealed part of the Texas Health Maintenance Organization Act,

required the HMO to "pay the total amount of the claim in accordance with the contract

between the physician or provider and the [HMO]" within forty-five days of receiving

a clean claim from a physician or provider.[7]  Article 3.70, on the other hand, applies to

health insurance policies that offer different benefits from the basic level of coverage

for the use of preferred providers.  *Id.* (citing TEX. INS. CODE ANN. art. 3.70-3C, § 2).

---

[6]   *See* TEX. INS. CODE ANN. Art. 20A.18B, *repealed by* Acts 2001, 77th Leg., ch. 1419, §
       31(b)(13)-(15) (effective June 1, 2003); TEX. INS. CODE ANN. Art. 21.55, *repealed by* Acts
       2003, 78th Leg., ch. 1274, § 26(a)(1) (effective April 1, 2005); TEX. INS. CODE ANN. Art.
       3.70, *repealed by* Acts 2003, 78th Leg., ch. 1274, § 26(a)(2), (3) (effective April 1, 2005).

[7]   *Baylor v. Arkansas,* 331 F. Supp. 2d at 511 (quoting TEX. INS. CODE ANN. Art.
       20A.18B(c)(1), *replaced by* TEX. INS. CODE ANN. tit. 6, §§ 843.338 – 843.3385).  Article
       20A.18B further provides:

              A health maintenance organization that violates Subsection (c) . . . of this
              section is liable to a physician or provider for the full amount of billed charges
              submitted on the claim or the amount payable under the contracted penalty
              rate, less any amount previously paid or any charge for a service that is not
              covered by the health care plan.

       TEX. INS. CODE ANN. Art. 20A.18B(f), *replaced by* TEX. INS. CODE ANN. tit. 6, § 843.342
       (Vernon Pamphlet 2004-2005).

The prompt payment provisions in Article 3.70-3C, § 3A, which the Texas Legislature repealed in 2005, required an insurer "[not] later than the 45th day after the date that [it] receives a clean claim" from a provider to "make a determination of whether the claim is payable."[8]  Article 21.55, also repealed, provided for certain damages for breach of that duty.  *See Protective Life Ins. Co. v. Russell,* 119 S.W.3d 274, 284-85 (Tex. App.–Tyler 2003, pet. denied).

MHHS's statutory claims against Great-West for violating Texas' prompt pay statutes do not enforce rights protected by ERISA's civil enforcement provision.  *See Davila,* 124 S.Ct. at 2496; *see also Foley v. Southwest Tex. HMO, Inc,* 226 F. Supp. 2d 886, 901 (E.D. Tex. 2002) (concluding that ERISA did not preempt the plaintiff's claims under Article 20A.18B).  To the contrary, the substance of MHHS's statutory claims are governed by state laws that enforce the prompt payment of claims by insurers to independent health care providers.  *Baylor v. Arkansas,* 331 F. Supp. 2d at

---

[8]    Article 3.70-3C, § 3A(e) further provides:

> (1)   if the insurer determines the entire claim is payable, [the insurer must] pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer;

> (2)   if the insurer determines a portion of the claim is payable, [the insurer must] pay the portion of the claim that is not in dispute and notify the preferred provider in writing why the remaining portion of the claim will not be paid; or

> (3)   if the insurer determines that the claim is not payable, [the insurer must] notify the preferred provider in writing why the claim will not be paid.

511. Cotton and Franklin's ERISA plans provide only factual background for MHHS's statutory claims; the plans are peripheral to Great-West's statutory obligation to promptly pay MHHS for services rendered. *Id.* The Court will not, in the name of ERISA, insulate an insurer from liability against a third-party health care provider seeking to enforce its rights under a state statute that requires prompt payment of claims. *Id.* at 511. The Texas Insurance Code — rather than the insureds' employee benefit plans — is the basis of this claim. *Id.* at 512. MHHS's rights of recovery under the Texas prompt pay statutes exist independent of Cotton and Franklin's rights as plan participants and MHHS's prompt pay statutory claims are not completely preempted by ERISA. *Id.*

### 3.   "Negligence" and "Intentional Acts" Claims

MHHS also claims that Defendants acted negligently or intentionally by breaching duties owed to it "separate and apart from the underlying breach of contract" by: (1) failing to properly pay all the patients' claims on a timely basis; (2) failing to timely investigate all the patients' claims; (3) continuing to delay payment of the claims beyond the contractual and statutory time limitations; (4) intentionally misleading MHHS about payment expectations under the contract; (5) failing to pay claims solely based on the alleged lack of pre-authorization. To determine if there is complete preemption under ERISA § 502, *Davila* requires that the Court assess, first, whether

MHHS itself has standing to assert its negligence/intentional act  claims and, second, whether Great-West owed MHHS a legal duty independent from obligations under the ERISA plan.  The Court concludes that, just as with the contract and state statutory claims discussed above, MHHS's negligence/intentional act claims against Great-West flow from these parties' direct communications and business relationship governed by the Hospital Agreement, state statutes and common law, and not merely (if at all) from patients' assigned rights under the ERISA plan.[9]  This is not a case for "denial of coverage for medical care, where the [plaintiff] is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated."  *Davila*, 124 S.Ct. at 2496; *see also Children's Hosp.*, 360 F. Supp. 2d at 206 (holding under *Davila* analysis that hospital's state law claims for misrepresentation of coverage were not preempted).

---

[9]    The Court notes that there is a serious question regarding whether  at least some of these negligence/intentional act claims are truly separate from the Hospital Agreement under Texas law.  "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort."  *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 597 (Tex. 1992), *rev'd on other grounds, Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212 (Tex. 2002).  "In determining whether the plaintiff may recover on a tort theory, it is . . . instructive to examine the nature of the plaintiff's loss.  When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."  *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991).  This means that "when a party must prove the contents of its contract and must rely on the duties created therein, the action is "in substance an action *on the contract*, even though it is denominated an action for negligent performance of the contract."  *Id.* at 496 (Gonzalez, J., concurring) (emphasis in original).  This will be an issue for the state court to decide.

Several Fifth Circuit opinions address preemption of state law tort and other claims asserted by health care providers in cases removed from state court. *See Transnational Hosp. Corp. v. Blue Cross & Blue Shield of Tex.,* 164 F.3d 952, 954 (5th Cir. 1999); *Cypress Fairbanks Med. Ctr. v. Pan-American Life Ins. Co.,* 110 F.3d 280, 282 (5th Cir. 1997); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 243-44 (5th Cir. 1990). Close review of these rulings suggests that their reasoning relied on ERISA § 514 (conflict preemption), not § 502 (complete preemption), and each preceded the Supreme Court's decision in *Davila*.[10] Complete preemption based on ERISA § 502 is often confused with ordinary, or conflict, preemption, which stems from ERISA § 514(a). Section 514(a) provides that ERISA "[s]hall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan" described in ERISA. 29 U.S.C. § 1144(a) (emphasis added). Conflict preemption is a defense to a state claim and does not create subject matter jurisdiction for cases filed in federal court or cases removed from state court. *See, e.g., Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337 (5th Cir. 1999) (finding that a claim that relates to an ERISA plan, but does not seek to enforce rights under § 502(a), does not create federal

---

[10]     Contrary to Great-West's assertions, *Davila* does not alter the Fifth Circuit's test for conflict preemption set out in *Transitional*. *Davila* concerned complete preemption of ERISA beneficiaries' claims, while *Transnational* addresses conflict preemption. Similarly, *Mayeaux v. Louisiana Health Serv. & Indem. Co.,* 376 F.3d 420, 432-33 (5th Cir. 2004), quoted in Great-West's response, sets forth a conflict preemption analysis.

removal jurisdiction); *Copling v. Container Store, Inc.,* 174 F.3d 590, 594-95 (5th Cir.

1999), *rev'd on other grounds, Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir.

2003) (same); *McClelland v. Gronwaldt,* 155 F.3d 507, 516-19 (5th Cir. 1998), *rev'd*

*on other grounds, Arana,* 338 F.3d 433 (same); *Baylor v. Arkansas,* 331 F. Supp. 2d

at 506-07 (same); *Tenet Healthsystem,* 2005 WL 1038072, at *2, *3 (same); *Johns*

*Hopkins Hosp. v. Carefirst of Md., Inc.,* 327 F. Supp. 2d 577, 581-82 (D. Md. 2004)

(same); *see also Arana,* 338 F.3d at 438-40 (finding insured's state-law claim fell

within scope of § 502(a) and was therefore completely preempted; holding conflict

preemption under § 514 is not an additional requirement for removal jurisdiction).

Therefore, this Court has used the *Davila* approach to ascertain whether there is subject

matter jurisdiction over MHHS's state law tort claims in this removed case.[11]

The Court observes, however, that some of MHHS's negligence claims are

vague and may be collateral challenges under the ERISA plans to Great-West's

decisions not to provide benefits for Cotton and Franklin.  Insofar as these claims rely

on the relationships among the ERISA principals, *i.e.,* the plans acting through their

administrators, the beneficiaries, and the employers, the claims may trigger a conflict

---

[11]     The Supreme Court noted in *Davila* that a state cause of action falling within the scope of
§ 502 for complete preemption purposes also is conflict-preempted under ERISA § 514
because "a state cause of action that provides an alternative remedy to those provided by the
ERISA civil enforcement mechanism [§ 502] conflicts with Congress' clear intent to make
the ERISA mechanism exclusive." *Id.* at 2498 n.4 (citation omitted.)

preemption analysis. *See Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 432-33 (5th Cir. 2004) (holding state law claims challenging the handling, review and disposition of a request for coverage made by doctor could not survive conflict preemption under § 514 of ERISA); *Transnational Hosps. Corp. v. Blue Cross & Blue Shield of Tex.,* 164 F.3d 952, 954, 955 (5th Cir. 1999) (stating that ERISA preempts state laws insofar as they "relate to" an ERISA plan; setting forth Fifth Circuit test for preemption on this basis).[12]   Nevertheless, because none of MHHS's claims are completely preempted, the Court has no subject matter jurisdiction to determine whether MHHS's negligence/intentional tort claims "relate to" ERISA and are therefore conflict preempted under § 514 as applied in *Transnational* and other Fifth Circuit decisions.   The Court therefore does not decide the conflict preemption questions raised by these claims and leaves the issue for state court resolution to the extent necessary.[13]

---

[12]   That said, it is noted that the Fifth Circuit has specifically held that, absent a patient's assignment of benefits, "ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer or plan administrator for its misrepresentation regarding the existence of health care coverage." *Transitional Hosp. Corp. v. Blue Cross & Blue Shield of Tex., Inc.,* 164 F.3d 952, 955 (5th Cir. 1999) (citing *Memorial Hosp. Sys. v. Northbrook Life Ins.* Co., 904 F.2d 236, 243-46 (5th Cir. 1990) (holding misrepresentation of coverage claims were not preempted).   Furthermore, in *In Home Health, Inc. v. Prudential Ins. Co. of Am.,* 101 F.3d 600, 604 (8th Cir. 1996), the Eighth Circuit pointed out that a majority of circuits have held that state law claims made by third party health care providers for misrepresentations made by plan administrators are not preempted.

[13]   This reasoning applies equally to conflict preemption arguments that Great-West may assert as to MHHS's other claims.   Conflict preemption is addressed here as a matter of

(continued...)

4.      **Additional Texas Insurance Code and DTPA Claims**

MHHS also asserts additional claims for deceptive trade practices in the business

of insurance under Article 21.21, §§ 4, 16 of the Texas Insurance Code[14] and under

Texas Business and Commerce Code § 17.46.[15]   Although MHHS does not clearly

---

[13]      (...continued)
convenience.

[14]      *See* TEX. INS. CODE ANN.  Art. 21.21, *repealed by* Acts 2003, 78th Leg., ch. 1274, § 26(a)(a)
(effective April 1, 2005), *replaced by* TEX. INS. CODE ANN. tit. 5, § 541.001 *et seq.* (Vernon
2004-2005).  MHHS alleges the following violations of Article 21.21, § 4:

> (1)      Making, issuing, circulating, or causing to be made, issued or
> circulated, any estimate, illustration, circular or statement misrepresenting the
> terms of any policy issued or to be issued on the benefits or advantages
> promised thereby . . .;
>
> (2)      Causing, directly or indirectly, to be made, published, disseminated,
> circulated or placed before the public, or in any other way, a statement
> containing any assertion, representation or statement with respect to the
> business of insurance which is untrue, deceptive or misleading;
>
> (11) [*sic*] Misrepresenting an insurance policy by: (a) making an untrue
> statement of material fact; (b) failing to state a material fact that is necessary
> to make other statements made not misleading, considering the circumstances
> under which the statements were made; (c) making a statement in such
> manner as to mislead a reasonably prudent person to a false conclusion of a
> material fact; (d) making a material misstatement of law; or (e) failing to
> disclose any matter required by law to be disclosed, including a failure to
> make disclosure in accordance with another provision of this code.

Plaintiff's Original Petition, ¶ 36 (numbering as in Petition, apparently intended to correspond
to subsections of § 4 of Article 21.21).

[15]      MHHS alleges the following violations of the Texas Deceptive Trade Practices Act, for which
relief is provided under article 21.21, § 16, of the Texas Insurance Code:

> (1)      "causing confusion or misunderstanding as to the source, sponsorship,
> approval, or certification of goods or services" § 17.46(b)(2)

(continued...)

describe in its Original Petition the alleged factual circumstances giving rise to the deceptive practices claims, these claims do not refer to any assignment of benefits, do not assert a right to policy benefits, and do not allege bad faith processing of its claim. *See Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 244 (5th Cir. 1990) (specifically holding hospital's claim of deceptive practice under Article 21.21 for misrepresentation of coverage status was not preempted under ERISA). Construing all factual allegations in favor of the nonmovant, "[t]he gravamen of this cause of action appears to be negligent misrepresentation, albeit a Texas codification of that common law doctrine." *See id.* These claims could not have been brought under § 502(a) because they rely on the alleged existence of state law statutory duties to a third-party health care provider independent of ERISA and the plans in issue. Therefore, these claims are not completely preempted. *See Davila,* 124 S. Ct. at 2496.

---

[15]      (...continued)

> (2)     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; § 17.46(5).

> (3)     representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; § 17.46(b)(7).

> (4)     representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law; § 17.46(b)(12).

Plaintiff's Original Petition, ¶ 36 (punctuation as in original).

III.   **CONCLUSION AND ORDER**

None of MHHS's claims are completely preempted and removal was not warranted.  This Court therefore has no subject matter jurisdiction to determine whether any of MHHS's claims are conflict preempted.  This case will be remanded to state court.  It is therefore

**ORDERED** that Plaintiff's Motion to Remand [Doc. # 3] is **GRANTED.**  It is further

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 10] is **DENIED without prejudice.**

SIGNED at Houston, Texas this **30th** day of **June, 2005**.

_____
Nancy F. Atlas
United States District Judge